J-A29008-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WASHINGTON AREA HUMANE SOCIETY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIE DEE HARR | : | |
| | : | No. 336 WDA 2021 |
| Appellant | : | |

Appeal from the Judgment Entered February 9, 2021
In the Court of Common Pleas of Washington County Civil Division at
No(s): 2020-2270

BEFORE: BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED: MARCH 9, 2022**

Appellant, Christie Dee Harr, appeals from the February 9, 2021 judgment entered in favor of Appellee, Washington Area Humane Society ("WAHS"), in the amount of $1,113,765.33. This judgment was entered after WAHS filed a petition under the Costs of Care of Seized Animals Act ("CCSAA"),[1] seeking reimbursement for costs it incurred in caring for animals owned by Appellant that were seized by WAHS. On appeal, Appellant contends that the trial court lacked jurisdiction to enter the judgment in favor of WAHS

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 P.S. §§ 30.1-30.10. The CCSAA provides that if animals are seized upon criminal charges relating to animal cruelty, a society, association, or other nonprofit organization providing care for the animals may file a petition for the reasonable costs of care for the seized animals. **See** 18 P.S. § 30.3(a)(2).

because it failed to attach an indispensable party, the Humane Society of the

United States ("HSUS").  After careful review, we affirm.

The trial court summarized the pertinent facts and procedural history of

this case, as follows:

## I. FACTUAL HISTORY

On October 30, 2019, 206 animals were seized by … WAHS from [Appellant]….  [Appellant] is also the director of an organization entitled[, "]Animal Orphans Animal Rescue and Pet Sanctuary["]….  The animals seized were 182 cats, 3 dogs, 18 chickens[,] and 2 mice from two properties, a residence in Monessan in Westmoreland County and a church building in Donora, Washington County.  WAHS'[s] Officer Miranda [Coombs] testified about the seizure of the animals on that day.  Ms. Combs was present[,] but was not the officer in charge, [as] that person was Glen Thompson[,] who died unexpectedly prior to the hearing [on WAHS's petition for costs under the CCSAA].  After previous intervention efforts failed, the WAHS obtained search warrants for the two properties based primarily on averments concerning the dangerous condition of the Donora property, where the roof was [in] a great danger of collapsing.  Present at each property was a Humane Officer from WAHS, police officers from the jurisdiction[,] and representatives from the Humane Society of the United States (HSUS).  WAHS contacted … HSUS for assistance because of the large number of animals that were involved.  Meetings occurred between the WAHS, HSUS[,] and the Washington County District Attorney's Office to coordinate the exhaustive effort that would be needed to seize a large number of animals.[2]  WAHS had contacted HSUS because that organization was known for handling large[-scale] animal hoarding situations.  WAHS did not have sufficient shelter space for such [a] large number of animals[,] and [it] also could not financially provide veterinary care and housing.

In the Donora residence, the Humane Officers found over 50 cats, 2 mice, 3 dogs[,] and 8 chickens.  Some of the cats were in crates

---

[2] We note that Appellant has been criminally charged with numerous counts of aggravated cruelty to animals.

stacked on top of each other, allowing feces to fall down into the lower cage[s]. The chickens were kept in horrific conditions in a small[,] windowless basement room. The floor had two inches of feces. The ammonia was so powerful that the persons clearing the house had to wear [personal protective equipment].

As the animals were removed from the premises, Dr. Sampson, DVM, triaged each animal and noted the needed care. Each animal was processed, delineating where the animal [had been] located[,] and each animal was photographed. Since there was such a large number of animals and … WAHS was physically unable to accommodate such a number, … HSUS[,] in conjunction with … WAHS[,] located a facility in Delaware that could take all the cats. A tractor-trailer was used to transport them to the Delaware shelter. The shelter charged $14 per day[,] per animal. The chickens went to a different facility in Pennsylvania. The bills and invoices for the care of the animals for boarding and veterinary care [were] submitted as Exhibits 2 and 3.

## II. PROCEDURAL HISTORY

[WAHS] filed … [the] petition [seeking reimbursement of costs under the CCSAA] on May 7, 2020. This court, at the request of … WAHS, issued a rule to show cause, returnable on July 10, 2020[,] and ordered [Appellant] to file an answer. [Appellant] filed a motion to continue the hearing on the petition due to a conflict with [her] schedule[,] and also asserted that the hearing should be [stayed until] … after the resolution of [her] pending criminal charges. [Appellant] did not file an answer to the petition. The court granted the motion to continue for a short period of time[,] but denied the motion to stay. … [Appellant] appealed and the Pennsylvania Superior Court quashed the appeal as interlocutory on October 13, 2020. The hearing on the petition for reasonable costs of care was held on February 5, 2021. Neither [Appellant] nor her counsel appeared, without explanation. On February 8, 2021, [Appellant] filed a "Post-Hearing Brief and Objections to Judgment." A copy was not provided to the court.

Trial Court Opinion ("TCO"), 6/16/21, at 1-4 (citations to the record and unnecessary capitalization omitted).

- 3 -

On February 9, 2021, the court entered judgment in favor of WAHS and against Appellant in the amount of $1,113,765.33. Appellant filed a timely notice of appeal, and she complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on June 16, 2021. Herein, Appellant states a single issue for our review:

> Whether the [trial c]ourt … erred, exceeded its authority under the [CCSAA], 18 P.S. [§] 30.1, *et seq.*, and proceeded without jurisdiction due to the failure to include indispensable parties when it awarded judgment for costs and expenses incurred by third parties who cared for animals mostly outside of the Commonwealth of Pennsylvania?

Appellant's Brief at 3.

Before addressing Appellant's argument, we observe that she did not raise before the trial court her claim that an indispensable party (namely, HSUS) was not included in this litigation. However,

> [u]nder Pennsylvania law, the failure to join an indispensable party implicates the trial court's subject matter jurisdiction. ***Sabella v. Appalachian Dev. Corp.***, 103 A.3d 83, 90 (Pa. Super. 2014). "Failure to join an indispensable party goes absolutely to the court's jurisdiction and the issue should be raised *sua sponte.*" ***Barren v. Dubas***, … 441 A.2d 1315, 1316 ([Pa. Super.] 1982) (internal quotation marks and citations omitted). This requirement is reflected in our Rules of Civil Procedure.
>
> **Rule 1032. Waiver of Defenses.**
>
> **Exceptions. Suggestion of Lack of Subject Matter Jurisdiction or Failure to Join Indispensable Party**
>
> (a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, **except** a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon

- 4 -

which relief can be granted, **the defense of failure to join an indispensable party**, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other nonwaivable defense or objection.

\*\*\*

(b) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action.

Pa.R.C.P. 1032; **see also id.** at 2227(a) (stating, "[p]ersons having only a joint interest in the subject matter of an action must be joined on the same side as plaintiffs or defendants[]"). Whether a court has subject matter jurisdiction presents a question of law, making our standard of review *de novo* and the scope of our review plenary. **Mazur v. Trinity Area Sch. Dist.**, 961 A.2d 96, 101 ([Pa.] 2008).

**Orman v. Mortgage I.T.**, 118 A.3d 403, 406 (Pa. Super. 2015) (emphasis added). Accordingly, Appellant has not waived her jurisdictional challenge to the court's failure to join HSUS by not raising it below.

In any event, we conclude that her claim is meritless.

"[A] party is indispensable 'when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights.'" **City of Phila. v. Commonwealth**, 838 A.2d 566, 581 ([Pa.] 2003), **quoting Sprague v. Casey**, 550 A.2d 184, 189 ([Pa.] 1988). "If no redress is sought against a party, and its rights would not be prejudiced by any decision in the case, it is not indispensable with respect to the litigation." **Grimme Combustion, Inc. v. Mergentime Corp.**, 595 A.2d 77, 81 ([Pa. Super.] 1991), **citing Sprague, supra**. We have consistently held that a trial court must weigh the following considerations in determining if a party is indispensable to a particular litigation.

1. Do absent parties have a right or an interest related to the claim?

2. If so, what is the nature of that right or interest?

3. Is that right or interest essential to the merits of the issue?

4. Can justice be afforded without violating the due process rights of absent parties?

*Martin v. Rite Aid of Pa., Inc.*, 80 A.3d 813, 814 (Pa. Super. 2013); *accord Mechanicsburg Area Sch. Dist. v. Kline*, 431 A.2d 953, 956 ([Pa.] 1981). "In determining whether a party is indispensable, the basic inquiry remains 'whether justice can be done in the absence of a third party.'" *Pa. State Educ. Ass'n v. Commonwealth*, 50 A.3d 1263, 1277 (Pa. 2012), *quoting CRY, Inc. v. Mill Serv., Inc.*, 640 A.2d 372, 375 ([Pa.] 1994).

*Orman*, 118 A.3d at 406-07.

Here, Appellant avers that HSUS was an indispensable party to WAHS's petition for costs of care under the CCSAA because HSUS was the entity that "conducted an investigation, coordinated with law enforcement, executed search warrants, seized animals, arranged for them to be transported out of state, and paid all the expenses to care for and house the animals." Appellant's Brief at 14. She maintains that the evidence at the hearing on the petition established that all costs for caring for the animals "fell to … HSUS[,]" and that "[a]ll of the sheltering and the majority of the veterinary bills took place in Delaware and New Jersey, all being billed to … HSUS[,] not … WAHS." *Id.* at 17. Appellant insists that "[t]he [CCSAA] does not allow an organization to 'assign' the collection action" to another entity, "and toss a million dollars in expenses back and forth just to create jurisdiction in Pennsylvania for bills occurring in the State of Delaware and other locations." *Id.* Accordingly,

Appellant avers that HSUS was an indispensable party to the petition for costs under the CCSAA.

In rejecting Appellant's argument, the trial court concluded that HSUS has no right related to the WAHS's claim for reimbursement of the costs incurred in caring for the animals seized from Appellant. It explained:

> Appellant appears to assert that [WAHS] gave the animals to … HSUS and that HSUS incurred the debt, not WAHS and, therefore, … HSUS is the real party in interest. The facts elicited at trial belie that contention. Shalimar Oliver, who is employed by HSUS as a Manager of Animal Crimes, testified that … HSUS was contacted by … WAHS because of the sheer number of animals they expected to seize. … WAHS and HSUS entered into a Memorandum of Understanding [("MOU")] whereby HSUS would act on behalf of WAHS[,] and WAHS would pursue costs of care on [HSUS's] behalf and the money recovered would go to the care providers of the animals. WAHS seized the animals; WAHS is the entity legally responsible for their care. This argument lacks merit.

TCO at 6.

The record supports the court's determination. WAHS Officer Miranda Coombs testified that HSUS agreed "to assist" WAHS in the seizure of Appellant's animals. N.T. Hearing, 2/5/21, at 20. She explained that HSUS offered many resources, such as transportation of the animals, veterinary care, and "financial assistance…." *Id.* at 20-21. Ms. Coombs confirmed that "there [was] an understanding that HSUS would incur some of these costs, and that reimbursement would then be sought" through the CCSAA. *Id.* at 21. Ms. Oliver with HSUS corroborated Ms. Coombs' testimony, explaining that the HSUS's general counsel "assist[ed] with the development of the … MOU … to identify what the need [was] from … [WAHS], and what [HSUS was]

- 7 -

committing to provid[e] to them, and for how long." *Id.* at 37. The testimony of these two witnesses supports the court's determination that WAHS and HSUS entered an MOU, by which they agreed that WAHS was solely responsible for recuperating from Appellant the costs associated with caring for her seized animals. Thus, HSUS had no claim related to the petition seeking reimbursement for those costs.[3] Rather, WAHS alone was the proper agency to seek reimbursement under the CCSAA.

Moreover, Appellant cites no legal support for her argument that WAHS, which is a Pennsylvania non-profit organization, could not seek reimbursement for costs paid to providers in other states. We also reject her contention that "HSUS cannot simply say the [MOU] assigned WAHS some rights to collect similar to a collection agency because the purported agreement was never submitted to the court." Appellant's Brief at 14. Appellant chose not to attend the hearing on the Petition and, thus, she lodged no objection to the testimony concerning the agreement between WAHS and HSUS. She also did not preserve, in her Rule 1925(b) statement, any challenge to the sufficiency of the evidence to sustain the court's decision that WAHS and HSUS had an agreement naming WAHS as the party responsible for the costs of care for Appellant's seized animals. Pa.R.A.P. 1925(b)(4)(vii)

---

[3] Appellant also fails to explain how HSUS's due process rights are violated by not being a party to the present judgment. HSUS did not seek to join this action, and we presume that it can pursue legal recourse under the MOU if it is not reimbursed by WAHS for the costs it spent in caring for Appellant's animals.

("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").[4] Consequently, Appellant cannot raise, for the first time on appeal, her claim that the testimony concerning the parameters of the MOU between WAHS and HSUS was insufficient to support the court's decision. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Finally, we recognize that the true crux of Appellant's issue appears to be a claim that it was illegal for HSUS to be involved in seizing her animals. *See* Appellant's Brief at 14 ("This court cannot allow HSUS to commit a crime by acting as humane police officers, seizing animals, rampaging through properties taking photographs, moving animals that do not belong to it out of state without a judicial order, in violation of Pennsylvania law, then using a third-party to sue under a 'memorandum of understanding' that has not been disclosed."); *see id.* at 15 ("All law enforcement functions the HSUS engaged in such as its 'investigation,' entering private property, taking photographs during the HSUS'[s] search and seizure, executing search warrants, seizing

---

[4] We point out that the trial court's Rule 1925(b) order notified Appellant that "[a]ny issue not properly included in the [Rule 1925(b) s]tatement shall be deemed waived." Order, 3/11/21, at 1. *See Greater Erie Indus. Development Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 225 (Pa. Super. 2014) (*en banc*) ("[I]n determining whether an appellant has waived his issues on appeal based on non-compliance with Pa.R.A.P. 1925, it is the trial court's order that triggers an appellant's obligation[.] ... [T]herefore, we look first to the language of that order.") (citations omitted).

property and animals, and taking those animals outside of Pennsylvania constituted crimes.") (citation omitted); *id.* at 16 ("Nothing in the Cost of Care Act allows a party to seek recovery of expenses that it did not incur simply to reimburse a third-party that lacked authority in Pennsylvania to take the actions it did."). However, Appellant never argued before the trial court that WAHS should be denied funds under the CCSAA because HSUS's involvement was unauthorized or illegal. Accordingly, this claim is waived. *See* Pa.R.A.P. 302(a), *supra*.

In sum, Appellant has not demonstrated that HSUS was an indispensable party to WAHS's petition under the CCSAA. Therefore, we affirm the court's judgment against Appellant in the amount of $1,113,765.33.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2022

- 10 -